```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ODELL ALLEN,

                    Petitioner,           MEMORANDUM & ORDER
                                          11-CV-1940(JS)
     -against-

MAUREEN BOSCO, Acting Executive
Director of the Central New York
Psychiatric Center,

                    Respondent.
----------------------------------------X
APPEARANCES
For Petitioner:    Odell Allen, pro se
                   146518
                   Central New York Psychiatric Center
                   P.O. Box 300
                   Marcy, NY 13403

For Respondent:    Paul B. Lyons, Esq.
                   Office of the N.Y. State Attorney General
                   120 Broadway
                   New York, NY 10271
```

SEYBERT, District Judge:

Odell Allen, pro se, ("Petitioner" or "Allen") petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons that follow, the Court orders an evidentiary hearing and appoints counsel for the limited purpose of representing Petitioner at the hearing.

BACKGROUND

I. New York's Statutory Scheme

Allen is currently confined in the Central New York

Psychiatric Center ("CNYPC")[1] pursuant to the New York Sex Offender Management and Treatment Act ("SOMTA"), as codified within Article 10 of the New York Mental Hygiene Law ("MHL").

SOMTA, enacted in 2007, "creat[ed] a new regime authorizing 'civil management' of certain sex offenders after completion of their prison terms, parole terms, or other period of state custody." Mental Hygiene Legal Servs. v. Cuomo, 785 F. Supp. 2d 205, 210 (S.D.N.Y. 2011). Under SOMTA, when a person who may be a detained sex offender[2] is nearing an anticipated release from confinement, a case review team[3] evaluates the

---

[1] The Court notes that Petitioner has named the wrong individual --Nassau County Sheriff, Michael Sposato--as Respondent. "[T]he proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" Rumsfeld v. Padilla, 542 U.S. 426, 434, 124 S. Ct. 2711, 159 L. Ed. 2d 513 (2004) (second alteration in original) (quoting 28 U.S.C. § 2242). Since Petitioner is in the custody of the CNYPC, the proper Respondent is Maureen Bosco, the Acting Executive Director of the CNYPC, see Directory of OHM Facilities, NEW YORK STATE OFFICE OF MENTAL HEALTH (Dec. 1, 2011), http://omh.ny.gov/omhweb/aboutomh/omh_facility.html, in her capacity as Acting Executive Director, as reflected in the caption herein. Thus, the Clerk of the Court is directed to modify the docket accordingly.

[2] A "detained sex offender" is a person "who is in the care, custody, control or supervision of an agency with jurisdiction" because the individual was convicted of or pled guilty to a sex offense or "a designated felony that was sexually motivated." MHL § 10.03(g).

[3] A "case review team" has three members, at least two of whom must be mental health professionals. The members are part of a case review panel established by the commissioner of mental health. MHL § 10.05(a).

individual and makes a preliminary determination whether he or she is a "sex offender requiring civil management," MHL § 10.05(e). A "sex offender requiring civil management" is a detained sex offender who "suffers from a mental abnormality." There are two types: "a dangerous sex offender requiring confinement" and "a sex offender requiring strict and intensive supervision."[4] MHL § 10.03(q).

If the case review team determines that a detained sex offender requires civil management, the Attorney General may file a "sex offender civil management petition" in New York State Court. MHL § 10.06(a). Within thirty days of the date of the petition, the court "shall conduct a hearing without a jury to determine whether there is probable cause to believe that the [individual] is a sex offender requiring civil management." MHL § 10.06(g). If the individual is not in custody when the civil management petition is filed or becomes eligible for release prior to the probable cause hearing, "the court shall order [his or her] return to confinement" or stay the individual's release pending the completion of the hearing.

---

[4] A "dangerous sex offender requiring confinement" is a "detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility." MHL § 10.03(e). A "sex offender requiring strict and intensive supervision" is a "detained sex offender who suffers from a mental abnormality but is not a dangerous sex offender requiring confinement." MHL § 10.03(r).

3

MHL § 10.06(h). The hearing must then take place within seventy-two hours of the individual's anticipated release date or return to confinement. Id.

Upon a court's finding of probable cause that an individual is a sex offender requiring civil management, SOMTA mandates that he or she be committed to a secure treatment facility pending resolution of a full commitment trial. MHL § 10.06(k).[5] Within sixty days of the probable cause determination, the court must conduct a commitment trial. MHL § 10.07(a). The trial proceeds in two phases: first, a jury must determine by clear and convincing evidence whether the individual is a detained sex offender who suffers from a mental abnormality. MHL § 10.07(d). For persons convicted of certain "designated felonies" (as opposed to individuals convicted of

---

[5] On March 29, 2011, Judge Deborah A. Batts, United States District Judge in the Southern District of New York, held that § 10.06(k) was facially unconstitutional because "it provide[d] for automatic detention of all individuals subject to Article 10, without a judicial proceeding to determine dangerousness." Cuomo, 785 F. Supp. 2d at 226, 229; see also State v. Enrique T., 929 N.Y.S.2d 376, 402 (Sup. Ct. Bronx Cnty. 2011). Accordingly, Judge Batts permanently enjoined the enforcement of the provision against those for whom there is probable cause only to require "strict and intensive supervision" prior to completion of a full commitment trial. Cuomo, 785 F. Supp. 2d at 226, 229.

4

sex offenses), this requires a determination that the offense was "sexually motivated."  MHL § 10.07(c).[6]

Second, if the jury determines that the individual is a detained sex offender who suffers from a mental abnormality, the court, at a dispositional hearing, must determine by clear and convincing evidence "whether the [individual] is a dangerous sex offender requiring confinement or a sex offender requiring strict and intensive supervision."  MHL § 10.07(f).  If the court finds that the individual is a dangerous sex offender requiring confinement, he or she "shall be committed to a secure treatment facility . . . until such time as he or she no longer requires confinement."  MHL § 10.07(f).  If the court does not find that the individual is a dangerous sex offender requiring confinement, "then the court shall make a finding of disposition that the [individual] is a sex offender requiring strict and intensive supervision, and [he or she] shall be subject to a

---

[6] For those convicted of "designated felonies" after the effective date of SOMTA, "sexual motivation" is an element of the offense itself and must be charged as part of the criminal offense, pled in the indictment, and proven before the criminal jury beyond a reasonable doubt.  For those convicted of a "designated felony" prior to SOMTA's enactment, the determination of "sexual motivation" is made retroactively by the jury at the Article 10 commitment trial.  See MHL § 10.07(c).  Judge Batts held that the Constitution requires that "sexual motivation" be proven at the commitment trial beyond a reasonable doubt, not by clear and convincing evidence as § 10.07(c) contemplates, and permanently enjoined the enforcement of that provision of § 10.07(c).  Cuomo, 785 F. Supp. 2d at 227.

5

regimen of strict and intensive supervision and treatment." MHL § 10.07(f). An individual may petition for modification or termination of the strict and intensive supervision every two years. MHL § 10.11(f).

II. Factual and Procedural Background

In 2003, Petitioner was arrested and indicted for allegedly breaking into the home of a stranger, forcing his way into her bedroom, and, after striking her in the head numerous times, attempting to remove her underwear and spread her legs apart while wearing only his underwear and a t-shirt, as well as a surgical mask and a ski cap. He was charged with Burglary in the First Degree, Attempted Rape in the First Degree, and Criminal Possession of a Controlled Substance in the Seventh Degree. (Pet. at 2.) On July 19, 2004, in full satisfaction of the charges in the indictment, Petitioner pled guilty to attempted burglary in the second degree and was sentenced to a prison term of five years. (Pet. at 1.) Petitioner served his entire sentence, which expired on November 14, 2008.

On October 1, 2008, just prior to Petitioner's release, the New York State Department of Corrections ("DOCS") gave notice of Petitioner's anticipated release, and his case was referred to a case review team for evaluation. (See La Ferlita Decl. Ex. A ¶ 28.) On October 31, 2008, the case review team determined that Petitioner was "a sex offender requiring

6

civil management." (See La Ferlita Decl., Ex. A ¶ 29.) On November 6, 2008, the Attorney General filed a sex offender civil management petition in New York Supreme Court, Dutchess County, asking the court to declare Petitioner a "detained sex offender suffering from a mental abnormality and requiring civil management." (La Ferlita Decl., Ex. A.) On November 7, 2008, Justice Christine A. Sproat of the Dutchess County Supreme Court authorized DOCS to retain Petitioner after the completion of his sentence pending his probable cause hearing. (See La Ferlita Decl., Exs. A, I ¶ 5.)

The probable cause hearing took place on November 25, 2008,[7] after which Justice Sproat held that there was probable cause to believe that Petitioner was (i) a sex offender requiring civil management and (ii) "sufficiently dangerous to require confinement pending trial" because "lesser conditions of supervision [would] not suffice to protect the public during the pendency of the proceedings." (La Ferlita Decl., Ex. B.) Justice Sproat ordered that Petitioner be detained pending the completion of his commitment trial. (La Ferlita Decl., Ex. B.)

On July 6, 2010, Petitioner moved to dismiss the Article 10 petition arguing that the State failed to set forth facts in the petition of an evidentiary nature supporting the

---

[7] The Court notes that this is beyond the seventy-two hours prescribed by MHL § 10.06(h).

7

claim and that continued prosecution of Petitioner violated due process and equal protection. (La Ferlita Decl., Ex. I.) On September 15, 2010, Justice James P. McCormack of the New York State Supreme Court, Nassau County[8] denied the motion, rejecting Petitioner's claim that the petition lacked an evidentiary basis because the sufficiency of the petition was rendered moot by Justice Sproat's finding of probable cause. (La Ferlita Decl., Ex. K at 3-4.) Justice McCormack did not rule on Petitioner's constitutional claims because they were voluntarily withdrawn. (La Ferlita Decl., Ex. K at 4.)

On October 7, 2010, Allen filed a petition for a writ of habeas corpus in the Nassau County Supreme Court seeking immediate release from custody on the ground that more than sixty days had passed since the probable cause determination and no commitment trial had been scheduled in violation of MHL § 10.07(a). (La Ferlita Decl., Ex. L.) According to Respondent, this was also voluntarily withdrawn. (See Resp't Mem. 6 n.6.)

The commitment trial began on November 17, 2010, nearly two years after the probable cause determination. On December 2, 2010, the jury returned a unanimous verdict finding <u>by clear and convincing evidence</u> that Petitioner is a detained

---

[8] Petitioner had his Article 10 petition removed to Nassau County, the county of the underlying criminal charges, pursuant to MHL § 10.06(b).

sex offender--i.e., an individual who committed a designated felony with sexual motivation--who suffers from a mental abnormality.[9] (See La Ferlita Decl., Ex. N ¶ 6.) Although over a year has passed since the jury determined that some civil management is necessary, the state court has yet to conduct a dispositional hearing. Thus, whether Petitioner requires confinement or may be released under strict and intensive supervision is still to be determined.

On December 20, 2010, Petitioner filed a motion to set aside the jury's verdict as against the weight of the evidence.[10] (La Ferlita Decl., Ex. N.) Justice McCormack denied the motion on March 24, 2011. (La Ferlita Decl., Ex. Q.)

Allen filed the pending § 2254 Petition in this Court pro se on April 14, 2011, arguing that he is entitled to federal habeas corpus relief on the grounds that (i) he was denied a fair trial because the prosecutor made inappropriate comments during closing argument; (ii) he was unable to confront and cross-examine the victim; (iii) he was denied effective

---

[9] The Court notes that the use of a clear and convincing standard to determine whether the commission of a designated felony was sexually motivated was subsequently declared unconstitutional by Judge Batts in Cuomo, 785 F. Supp. 2d at 227. See supra p. 4-5 n.6.

[10] This motion was filed by Petitioner's counsel. Petitioner also filed a pro se letter motion to set aside the verdict. (La Ferlita Decl., Ex. O.)

assistance of counsel; (iv) the trial violated the principles of double jeopardy; (v) the proceeding violated Petitioner's due process rights; and (vi) Petitioner's Fifth Amendment right against self-incrimination was violated.[11]  Respondent opposed arguing that the Petition must be dismissed (i) for failure to exhaust the claims therein; (ii) because it is premature; and (iii) pursuant to the Younger abstention doctrine because the state proceeding is ongoing.

## DISCUSSION

I. Evidentiary Hearing on the Issue of Exhaustion

Generally, before petitioning a federal court for a writ of habeas corpus, a petitioner must first exhaust any available state court remedies.  See 28 USC § 2254(b)(1)(A).  To properly exhaust a state court remedy, a petitioner "must apprise the highest state court of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition."  Galdamaz v. Keane, 394 F.3d 68, 73 (2d Cir. 2005).  The doctrine arises out of principles of comity, see Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982), and is "designed to protect the state courts' role in the

---

[11] The Court notes that a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is the proper means of challenging an involuntary civil commitment. See Hunter v. Gipson, 534 F. Supp. 2d 395, 398 (W.D.N.Y. 2008) (citing Buthy v. Comm'r of Office of Mental Health of N.Y. State, 818 F.2d 1046, 1051 (2d Cir. 1987)).

enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).

However, "exhaustion is not a jurisdictional condition, but a matter for discriminating judgment--to be guided always by respectful deference to the rightful province of state tribunals, but not to be trivialized by holding mechanically that every claim under the Federal Constitution must be rehearsed in state court before it may be vindicated in the federal courts." United States ex rel. Cole v. Follette, 301 F. Supp. 1137, 1150 (S.D.N.Y. 1968) (citing Fay v. Noia, 372 U.S. 391, 419-20, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963)), aff'd on other grounds, 421 F.2d 952 (2d Cir. 1970). Thus "exhaustion is not mandated where the state consideration would be either futile or where state procedures do not provide swift review of petitioner's claims." Jones v. Tubman, 360 F. Supp. 1298, 1300 (S.D.N.Y. 1973); see also Hill v. Mance, 598 F. Supp. 2d 371, 375 (W.D.N.Y. 2009); 28 U.S.C. § 2254(b)(1)(B)(ii) (exhaustion requirement excused when "circumstances exist that render such process ineffective to protect the rights of the applicant").

For example, courts have excused the exhaustion requirement when there has been "inexcusable or inordinate delay" in resolving Petitioner's claims in state court, see, e.g., Lee v. Stickman, 357 F.3d 338, 341 (3d Cir. 2004)

11

(citation omitted), or when there is no doubt that Petitioner's constitutional rights have been "plainly and grossly violated," Emmett v. Ricketts, 397 F. Supp. 1025, 1047 (N.D. Ga. 1975).

Here, Respondent does not contest that Petitioner's constitutional rights were violated, nor could it, given Judge Batt's decision in Cuomo, 785 F. Supp. 2d 205. Yet, notwithstanding the clear due process violation, Respondent urges this Court to defer ruling on Petitioner's claims, and accordingly extend Petitioner's confinement, until the state court conducts a dispositional hearing and all possible claims are exhausted at the state level. However, "[s]uch a procedure, which would constitute a 'hollow exercise in etiquette' and accomplish nothing except further delay in the vindication of petitioners' federal rights, is not mandated by the exhaustion doctrine." Emmett v. Ricketts, 397 F. Supp. at 1047 (citing Cole, 301 F. Supp. 1137)).

Nonetheless, before denying the state the ability to review Petitioner's constitutional claims, the Court wants more information on the status of the underlying state proceeding to determine whether the state process can effectively protect Petitioner's rights. Thus, the Court hereby ORDERS an evidentiary hearing on this limited issue.[12] At the hearing, the

---

[12] It is within this Court's discretion to order an evidentiary hearing because "such a hearing could enable [Petitioner] to

12

Court will hear testimony from Petitioner, his attorney(s) for the underlying state proceeding, and any other witnesses the parties wish to produce regarding the status of the dispositional hearing, the reasons for the inordinate delay, and the status of any post-trial motions or appeals (and if none have been filed, why not).

II. Appointment of Counsel

Although a habeas corpus petitioner has no constitutional right to counsel, the court may appoint counsel "when the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Courts possess broad discretion when determining whether appointment is appropriate, "subject to the requirement that it be 'guided by sound legal principle.'" Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 171-72 (2d Cir. 1989) (quoting Jenkins v. Chemical Bank, 721 F.2d 876, 879 (2d Cir. 1983)).

In deciding whether to exercise their discretion to appoint counsel in a habeas corpus proceeding, a district court must look to the standard set forth by the Second Circuit in determining whether to appoint counsel to indigent civil litigants under 28 U.S.C. § 1915. See Lawson v. Taylor, No. 10-

---

prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007); see also 28 U.S.C. § 2254(e)(2)(B).

13

CV-0477, 2011 WL 839509, at *1 (E.D.N.Y. Mar. 2, 2011); Williams v. Breslin, 06-CV-2479, 2008 WL 163599, at *1 (E.D.N.Y. Jan. 10, 2008). The Second Circuit has set forth the guiding legal principle as follows:

> First, the district court must "determine whether the indigent's position seems likely to be of substance." If this threshold requirement is met: "the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact-finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason . . . why appointment of counsel would be more likely to lead to a just determination."

Rivas v. Suffolk County, Nos. 04-4813, 04-5198, 2008 WL 45406, at *1 (2d Cir. Jan. 3, 2008) (quoting Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986)). The Second Circuit has explained that these factors are not restrictive and that "[e]ach case must be decided on its own facts." Hodge, 802 F.2d at 61.

Although the Court previously denied Petitioner's request for the appointment of pro bono counsel (Docket Entry 16), the Court has reevaluated the Petition and finds that appointment of counsel is warranted here. The threshold requirement of Hodge has been met and the balance of factors weighs in favor of appointment of counsel. Therefore, the Court

hereby orders the appointment of counsel from the Criminal Justice Act Habeas Corpus Panel for the purpose of representing Petitioner at the evidentiary hearing and preparing any post-hearing submissions that may be ordered by the Court.

## CONCLUSION

For the foregoing reasons, the Court hereby:

ORDERS that Alan M. Nelson, Esq. be appointed counsel for Petitioner.  Mr. Allen, having accepted the appointment, shall promptly file a notice of appearance and notify the Petitioner of his representation.  The Court further

ORDERS an evidentiary hearing on the issue of whether the exhaustion requirement should be excused.  Counsel for both parties are directed to confer and file a joint letter indicating the dates for which they are available for the hearing within fourteen (14) days of the date of this Memorandum and Order.

The Clerk of the Court is directed to change the caption to reflect Maureen Bosco, Acting Director of the CNYPC, as Respondent, to terminate the motion at Docket Entry 17 (because Respondent improperly docketed its response to the Court's Order to Show Cause as a motion to dismiss), and mail a copy of this Memorandum and Order to the Petitioner.

SO ORDERED.

/s/_JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: January __27__, 2012
       Central Islip, NY